# 22-2885-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JUAN TAVERAS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANT-APPELLANT**
**Pursuant to *Anders v. California*, 386 U.S. 738 (1967)**

JOHN S. WALLENSTEIN
LAW OFFICE OF JOHN S. WALLENSTEIN
*Attorneys for Defendant-Appellant*
1100 Franklin Avenue, Suite 305
Garden City, New York 11530
(516) 742-5600

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………..ii

JURISDICTIONAL STATEMENT......................…………………………………..1

STATEMENT OF THE CASE……………………………………………………...2

      FACTS…………………………………………………………………...2

      THE PROCEEDINGS IN DISTRICT COURT …………………………......2

      THE PLEA AGREEMENT AND APPELLATE RIGHTS WAIVER………....4

      THE PLEA PROCEEDING AND ALLOCUTION……………………………6

      DEFENDANT'S ATTEMPT TO WITHDRAW HIS PLEA……………………9

      THE SENTENCING HEARING…………...……………………….......10

SUMMARY OF ARGUMENT....................................................................13

**ARGUMENT**

      **THERE ARE NO NON-FRIVOLOUS ISSUES TO RAISE ON
      APPEAL**……………………………………………………………14

      **POINT ONE**
      DEFENDANT'S PLEA AND WAIVER OF APPELLATE RIGHTS
      WERE KNOWING, VOLUNTARY, AND COMPETENT…………………..14

      **POINT TWO**
      THERE ARE NO OTHER ISSUES TO BE RAISED………………………....19

      CONCLUSION………………………………………………………...20

      CERTIFICATE OF COMPLIANCE.......…………………………………...21

i

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Anders v. California*, 388 U.S. 738 (1967)………………………………………...14,20

*Boykin v. Alabama*, 395 U.S. 239 (1969)………………………………………………..15

*Brady v. United States*, 397 U.S. 742, 755 (1970)………………………………………16

*United States v. Arevalo,* 628 F. 3rd 93 (2nd Circuit, 2010)……………………………16

*United States v. Arvanitakis*, 2020 U.S. App.LEXIS 9344 (2nd Circuit, 2020)……….16

*United States v. Gomez-Perez,* 215 F.3rd 315 (2nd Circuit, 2000)…………………14,16

*United States v. Grandia*, 18 F.3d 184(2d Circuit,1994) ........................................... 16

*Wilson v. McGinnis,* 413 F. 3rd 196 (2nd Circuit, 2005)……………………………… 15

# <u>STATUTES AND RULES</u>

*18 U.S.C. § 3231*..................................................................................................1

*21 U.S.C. §841(b)(1)(A)*....................................................................................2,4

*21 U.S.C. §841(b)(1)(A)(i)*...................................................................................4

*21 U.S.C. §846*…….……......................................................................................4

*18 U.S.C.§ 3553(a)* ........................................................................................7, 16

*28 U.S.C. § 1291*..................................................................................................1

*Rule 28 (a) F.R.A.P.* ..................................................................1

*Rule 32 (a)(7)(B).* .................................................................21

*Rule 32 (a) (7) (C) F.R.A.P.* ....................................................21

## SENTENCING GUIDELINES

U.S.S.G. §2D1.1(a)(5)..............................................................4

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment [A-56][1] of the United States District Court for the Eastern District of New York, (Joanna Seybert, J.) entered  October 24, 2022, convicting appellant, Juan Taveras (hereinafter "Taveras") upon his plea of guilty to Count 1 of the indictment [A-10] filed under Docket # 19 CR 265 (JS), charging Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 846; 841 (b)(1)(A)(i) and (b)(1)(C). Taveras pleaded guilty to the charge pursuant to an agreement with the Government [A-14].  The District Court sentenced him to serve the mandatory minimum 120 months' imprisonment, followed by five years' supervised release, with conditions outlined in the Judgment [A-58-60]; and to pay a $100 special assessment.

 Jurisdiction in the District Court was pursuant to 18 U.S.C. § 3231. A Notice of Appeal [A-63] was timely filed on November 7, 2022.

Jurisdiction in this Court is conferred pursuant to 28 U.S.C § 1291.

---

[1] Material in brackets refers to pages of the Appendix.

1

## STATEMENT OF THE CASE

## FACTS

Between January, 2019 and April, 2019, Taveras was involved in the distribution of controlled substances in New York City and Long Island. He engaged in a number of telephone conversations related to the distribution of heroin, but unfortunately for him he was speaking with a government informant who recorded the calls. The culmination of the negotiations was an arranged sale of a kilogram of heroin in Hempstead, Nassau County. On April 18, 2019, Taveras traveled from the Bronx to Hempstead where he met the purchaser. The meeting was under surveillance, and when Taveras arrived he was arrested. In his possession in the vehicle was a package containing approximately 900 grams of heroin, and about 40 grams of cocaine. The cocaine belonged to Taveras for his personal use, and the government conceded that it was not a part of the transaction when Taveras pleaded guilty. [Plea Transcript, p.13, A-34]

## THE PROCEEDINGS IN DISTRICT COURT

On April 19, 2019, a Complaint was filed in the United States District Court for the Eastern District of New York, in which Taveras was charged with Conspiracy to Distribute a Controlled Substance and Possession of a Controlled Substance with Intent to Distribute, *21 U.S.C. §841(b)(1)(A) and §846.* That same day, Taveras appeared

2

before a Magistrate Judge in the Eastern District, and CJA counsel (this writer) was appointed. A permanent order of detention was entered. [A- 8, DE # 6 ]

The Indictment [A-10] was filed on June 12, 2019, charging the same two crimes. The arraignment was conducted on June 19, 2019, when Taveras again appeared before a Magistrate Judge and entered a Not Guilty plea. [A-8, DE # 11][2]   The case was assigned to Hon. Joanna Seybert.

Over the ensuing months, discovery was provided and reviewed, and plea negotiations were entered into. Those negotiations resulted in a proposed plea which required the defendant to enter a plea to the charged conspiracy, in exchange for which the government agreed to dismiss the substantive charge and, most importantly, recommend a sentence of 120 months, the statutory mandatory minimum.  After several discussions with counsel and an interpreter, Taveras rejected the offer, and he and his family then retained counsel. CJA counsel was relieved on January 15, 2020 when Attorney Christopher B. Shella filed a Notice of Appearance. [A- 7, DE #20]

Four months later, on May 7, 2020, for undisclosed reasons, Shella was relieved and directed to refund a portion of his fee to the family. [A- 6,  DE # 27] Shortly thereafter, Attorney Lauriano Guzman was retained and filed a Notice of Appearance on May 26, 2020. [A- 6, DE # 28]

---

[2] DE refers to Docket Entries on the District Court docket.

3

## THE PLEA AGREEMENT AND APPELLATE RIGHTS WAIVER

On October 14, 2020, represented by Mr. Guzman, the defendant and the Government entered into a plea agreement [A-14 -21], pursuant to which Taveras would plead guilty to Count 1 of the Indictment, in full satisfaction of all charges, and the Government agreed to dismiss the remaining charges. Count 1 charged Taveras with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, *21 U.S.C §§ 846 and 841 (b)(1)(A)(i))*. The plea agreement outlined the potential penalties, including the term of imprisonment of ten years to life imprisonment, a supervised release term of 5 years, as well as the fine range, and the mandatory nature of the $100 special assessment. [A-14-15]. Restitution was not applicable, and although the plea agreement contained a general forfeiture provision, the government did not seek forfeiture at sentencing.

The agreement set out the calculation of the estimated applicable United States Sentencing Guidelines ("U.S.S.G. or Guidelines"). The parties agreed that the Base Offense Level was 30, under U.S.S.G. §2D1.1(a)(5). A three level adjustment for Acceptance of Responsibility reduced the final offense level to 27.[A-16] The parties agreed that Taveras's Criminal History Category was III. [A-16]

This calculation yields a range of imprisonment of 87 to 108 months, but because the statutory mandatory minimum was ten years, the Guideline Range became 120

4

months as a result. [A-16]. The plea agreement advised Taveras that the Court was not bound by the Guidelines estimate, and that if the sentence were outside the range, he would not be entitled to withdraw his plea. [A-16] The parties agreed that either the Government or the defense would have the ability to present any relevant material to the Court in connection with sentencing.

Of significance here, the plea agreement contained a waiver of the defendant's right to appeal or otherwise challenge any sentence of 151 months or below. [A-17] The agreement expressly provided that this waiver is effective regardless of the methodology the Court used to arrive at the guideline range or the sentence. [A-17]

The defendant waived his right to further discovery material. [A-17]

The agreement contained a provision advising the defendant that if he is not a citizen of the United States (which he is not, and which all parties acknowledged during the proceedings) he is subject to additional consequences, which may include automatic removal from the United States. [A-19]

The agreement contained an acknowledgment that Taveras had read the entire agreement, discussed it with his attorney, understood all the terms, and entered into the agreement voluntarily and knowingly. [A-21] He signed the agreement, as did his attorney, Lauriano Guzman. [A-21]

5

## THE  PLEA PROCEEDING AND ALLOCUTION

On October 16, 2020, the defendant and counsel Lauriano Guzman appeared before Judge Seybert for the purpose of entering a guilty plea pursuant to the aforementioned agreement. [Plea Transcript, A-22-38] An official court interpreter was also present, as Taveras does not speak English. It should be noted that Guzman speaks fluent Spanish and was able to communicate readily with Taveras during his representation.

Judge Seybert proceeded to question Taveras about his education and his physical and mental health. [A-24]  Taveras denied any mental health issues or substance abuse issues, although he complained of myriad physical health issues. He described taking medication for a number of conditions, but indicated that he understood the proceedings and was ready to enter a plea. [A-25]   The Court determined that Guzman had no issues communicating with Taveras [A-25], and Taveras agreed he had enough time to consider the plea. [A-25] He told Judge Seybert that he had reviewed the agreement with his lawyer, and that he was satisfied with Mr. Guzman and the work he had done. [A-26]

Judge Seybert then again advised Taveras of the maximum and minimum terms of imprisonment, and the parameters of supervised release. [A-26]  She explained the maximum fine and the mandatory special assessment. [A-27]

6

Significantly, Judge Seybert advised Taveras that he will be deported after serving his sentence, and Taveras acknowledged his understanding.  [A-27]

Taveras' attorney also acknowledged having advised Taveras of the immigration consequences of his plea. [A-28]

She then advised Taveras of the rights that he was waiving by his plea.  [A-28]

> "THE COURT: You also know that you have a right to go to trial. You are presumed to be innocent. You have a Fifth Amendment right against self-incrimination. If you do not testify, I would tell the jury that they could not hold that against you. They could not even consider it. And your failure to testify would not even be discussed in the jury room. Of course, you could testify if you wanted to.
>
> * * *
>
> THE COURT: Mr. Taveras, you understand that the government has the burden of proof. They have to present evidence that will prove beyond a reasonable doubt you committed the crimes charged; each and every element. You don't have to present any evidence. The burden remains on the government.
>
> Mr. Taveras, you are entitled to a public, speedy trial by a jury and assistance of counsel, and if you didn't have funds to retain counsel, counsel would be appointed.
>
> You are retained, correct, Mr. Guzman?
>
> MR. GUZMAN: That is correct, Your Honor.
>
> THE COURT: Thank you, sir.
> (To the defendant): You also have a right to have counsel throughout every portion of the proceedings. You have the right to subpoena evidence, compel witnesses to testify, cross-examine them, confront them, and you would have appellate rights that you could pursue if you were convicted.
>
> Do you understand that?
>
> THE DEFENDANT:      Yes. " [A-28-29]

7

Judge Seybert then turned to the plea agreement discussed above. She ascertained that the agreement had been translated, and the defendant acknowledged that Mr. Guzman had read it to him in Spanish [A-29-30] The Court discussed the guidelines, and noted that the mandatory minimum, "the sentence I must give you" [A-30] must be at least 120 months. The defendant also acknowledged that he had agreed not to challenge the drug type and quantity.

Judge Seybert discussed with Taveras the appellate waiver, noting that he had agreed not to appeal any sentence of less than 151 months, and that he would not be able to get his plea back. [A-31] Taveras said that he understood.

Taveras affirmatively stated that no one had forced him to plead, or made any promises as to what the sentence would be. [A-31]. The Court noted that the Government had agreed to bring no further charges against Taveras, and not to take a position on where within the guidelines range the sentence should fall, and they would not seek an upward departure from the guidelines. [A-31] She then briefly discussed financial issues, and Taveras noted that he had nothing.

Judge Seybert then asked the Assistant United States Attorney to outline the government's expected proof at trial [A-33]. Following that, she asked Taveras to tell her what he did. He told her that he "came to sell that stuff I got" [A-33] and when asked

8

what that was, he said "heroin"[A-34]. He agreed that he was going to sell the heroin to another person [A-34].

After some colloquy about the cocaine (which the government conceded was not a part of the transaction) the Court asked Taveras how he was pleading to Count One, and he replied "I don't lie. I'm guilty. I came to tell that." [A-35]

Judge Seybert then found that Taveras had made a "knowing and voluntary waiver of your rights under Rule 11 and there is certainly a factual basis to believe you committed the crime as charged." [A-35] Although she never formally used the words of acceptance, it is clear from the context of the plea allocution that the Court did, indeed, accept the plea. She then scheduled sentencing and discussed some of the defendant's medical issues.

The Presentence Report was disclosed, and Mr. Guzman submitted a memorandum on Taveras' behalf related to sentencing on April 16, 2021. [A-5, DE # 36]. Significantly, that submission included an acknowledgment of the mandatory minimum of ten years, and a recommendation for that to be the sentence imposed. Sentencing was adjourned several times, and then Taveras filed a *pro se* letter seeking to withdraw his plea on August 2, 2021.

## DEFENDANT'S ATTEMPT TO WITHDRAW THE PLEA

The defendant's attempt to withdraw his plea was based on his unsubstantiated claim that Guzman had told him that the maximum sentence was ten years. As a result

of that conflict, Guzman was allowed to withdraw, and present counsel was then re-appointed. The Court adjourned a hearing on the motion, and after a number of adjournments occasioned by both the pandemic and the defendant's refusal to come to court, the Government filed a submission in opposition to the motion on January 7, 2022. On March 29, 2022, the court took the motion under consideration and reserved decision.

**THE SENTENCING HEARING**

On October 17, 2022, the parties appeared before Judge Seybert for sentencing. [A-39]. Judge Seybert began the proceeding by recapping the submissions she had reviewed in preparation for sentencing, and addressed the issue of the defendant's motion. She noted that Taveras had been aware of the mandatory minimum, had previously acknowledged it during his plea allocution, and his attorney, Mr. Guzman, had not only acknowledged the mandatory minimum but affirmatively advocated for its imposition. Judge Seybert found no basis for the withdrawal of the plea, and denied the motion to vacate it. [A-42]

Counsel addressed the Court, [A-43-44] and particularly addressed the issue of the defendant's request. Counsel pointed out that he had reviewed the PSR and had discussions with the defendant. In spite of the defendant's insistence that he would not "accept the ten years", it was clear to all that there was no choice.

Taveras was given an opportunity to speak. Before he did, the Court had him

sworn, and advised him of the consequences of perjury. [A-45] She then reminded him that he had been sworn at the time of his plea allocution, and had then been aware of the mandatory minimum. Significantly, Taveras recalled that the Court had told him about the mandatory minimum and the certainty of deportation [A-46], but moments later denied having been told that the Court must impose the 120 month minimum [A-47] and claimed that Guzman had misled him by advising that the maximum sentence was ten years, not the minimum.

After Judge Seybert reminded him that he had agreed not to challenge the drug type and quantity, and had admitted that he possessed the heroin [A-47], Taveras claimed that he had "from day one" been saying that he didn't bring drugs, but rather "roach repellant[sic] powder". [A-48] The Court engaged in a colloquy with the defendant, who maintained his position that he had been carrying roach powder, not drugs, in spite of the clear evidence that the substance was heroin, and his own prior admissions in both the plea agreement and the plea allocution.

The Court then turned to the Guidelines, and counsel agreed [A-50] that the Guideline calculation in the PSR : offense level 27 (after acceptance of responsibility) and Criminal History Category IV, yielding a range of 100-125 months. With the mandatory minimum, the range became 120-125 months. The government agreed with

11

that calculation. [A-50]

The Court rejected the defendant's contention that the substance was roach repellent, and found that the government had established the type and quantity of drugs. [A-51]. She then proceeded to impose a sentence of 120 months, the mandatory minimum, along with three years of supervised release and a $100 special assessment.

The Court then advised the defendant of his right to appeal, (in spite of the waiver) and that he had to file a Notice of Appeal within 14 days of the entry of judgment, and that he could proceed *in forma pauperis* if he could not afford the costs. The defendant advised counsel that he wanted to appeal, and counsel so advised the Court. [A-54]

Judgment consistent with the in court pronouncements was entered on October 25, 2022. [A-56]

On November 7, 2022, in spite of the appellate waiver in the plea agreement, defense counsel, at the defendant's request, filed a timely Notice of Appeal. [A-63]

This appeal followed.

## <u>SUMMARY OF ARGUMENT</u>

Because the defendant entered a counseled guilty plea pursuant to an agreement with the government, which included a waiver of his right to appeal any sentence of 151 months or less, there are no non-frivolous issues to raise on appeal where the defendant was sentenced to 120 months imprisonment, the statutory mandatory minimum sentence.

# ARGUMENT

## THERE ARE NO NON-FRIVOLOUS ISSUES TO RAISE ON APPEAL.

## POINT ONE

## DEFENDANT'S PLEA AND WAIVER OF APPELLATE RIGHTS WERE KNOWING, VOLUNTARY, AND COMPETENT

In *United States v. Gomez-Perez,* 215 F.3rd 315 (2nd Circuit, 2000) this Court set forth the matters to be addressed in an *Anders*[3] brief where there is a waiver of appellate rights, as in the case at bar. Counsel must address these limited issues: 1) "whether defendant's plea and waiver of appellate rights were knowing, voluntary, and competent, (internal citations omitted) or 2) whether it would be against the defendant's interest to contest his plea, and 3) any issues implicating a defendant's constitutional or statutory rights that either cannot be waived, or cannot be considered waived by the defendant in light of the particular circumstances," *Gomez-Perez, supra* at 319.

It is clear from a thorough review of the record in this case, including the plea agreement and the transcripts of the plea and sentencing proceedings, that there are no issues to be raised in this Court. The defendant was convicted after his plea of guilty in

---

[3] *Anders v. California,* 388 U.S. 738 (1967)

14

accord with the provisions of a valid plea agreement, and the sentence imposed, the mandatory minimum, was within the parameters of the appellate waiver.

As detailed in the Statement of the Case, *supra,* during the plea allocution, the District Judge made a determination of Taveras's competence to plead, as required. The plea allocution includes his admission to all the elements of the crime of which he was convicted. After having been advised of the rights he was entitled to assert, and which he would be waiving by pleading guilty, Taveras told Judge Seybert that he understood his rights and wished to waive them. He then admitted to bringing heroin to Long Island from the Bronx, which constituted the factual basis of the plea.

During the course of the allocution, the defendant affirmatively stated, under oath, that his plea was voluntary, with no coercion and no promises regarding sentence except for the mandatory minimum. He acknowledged that he was satisfied with the services provided by his retained counsel, and that he had sufficient time to review the case with counsel.

The waiver of rights was given knowingly and with a full understanding of his criminal exposure, which was not only contained in the written, signed plea agreement, but was explained to him by competent counsel, and again by the District Judge. The constitutional requirements for a valid plea were met. *Boykin v. Alabama*, 395 U.S. 239 (1969). "A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences'" *Wilson v. McGinnis,* 413 F. 3rd

196 (2nd Circuit, 2005), *citing Brady v. United States*, 397 U.S. 742, 755 (1970). No formulaic recitation is required; a plea allocution is valid if "…it is clear from the facts and circumstances that the defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and fully believed he was pleading guilty." *United States v. Grandia*, 18 F.3d 184, 187 (2d Circuit, 1994). The record supports a finding that Taveras knowingly and voluntarily pleaded guilty, and the District Judge satisfied herself that he understood what he was undertaking to do. His plea was knowing, voluntary, and competent, and the product of his informed, counseled choice.

This is so in spite of the defendant's later attempt to withdraw his plea. The District Judge found that the defendant was, in essence, "faking" [A-49] his claims of not understanding, after a forensic psychological examination. She found that all of the circumstances established the defendant's plea to be voluntary and counseled, with a factual basis. She found that his attorney at the time of the plea had advised him of the mandatory minimum sentence, and that the defendant's claim to the contrary had no basis.

The appellate waiver is presumptively enforceable, *United States v. Arevalo,* 628 F. 3rd 93 (2nd Circuit, 2010), *United States v. Arvanitakis*, 2020 U.S. App.LEXIS 9344 (2nd Circuit, 2020). The exceptions to that presumption are narrowly circumscribed, *see Gomez-Perez, supra.* In this case, the waiver was clearly made knowingly, voluntarily

and competently, all of those factors being thoroughly explored by the Court during the plea allocution. There is nothing in the record which would lead one to conclude that the sentence was based upon an impermissible factor, such as ethnic or racial bias, which might invalidate the waiver. There was no allegation of a breach of the agreement by the Government, and in fact there was no such breach. The District Judge clearly spelled out her rationale for the imposition of the sentence, and the sentence she imposed was, as noted a number of times herein, the mandatory minimum and below the threshold of the appellate waiver. Thus, the appellate waiver is enforceable, and there are no issues to be raised on this appeal concerning the sentence imposed.

Contesting the plea would not be in the defendant's interest. The defendant admitted his conduct in traveling to Long Island to deliver a kilogram of heroin. He was surveilled on his journey, and arrested in a vehicle in possession of more than 900 grams of heroin and a quantity of cocaine. His later effort to claim that the substance was roach repellent was clearly untrue. The government provided laboratory reports of the analysis of the substance, and Taveras admitted that it was heroin during his plea. There is no viable defense to the charges, which are based on the defendant's admissions and the evidence of the arrangements for the drug deal, as well as the lab reports. He was sentenced to the mandatory minimum of ten years, which he was informed of by at least two different attorneys and the Court itself. This was a reasonable sentence under the circumstances, and one which the defendant himself anticipated by entering into the plea

17

agreement and waiving his right to appeal such a sentence.

He pled guilty to a single count in a multiple count indictment, and was sentenced to the minimum possible, but a successful contest of the plea would result in a trial. Such a trial would be very likely to result in a conviction, and his guidelines would then be substantially higher than the minimum due to loss of the 3 level reduction of the guidelines for acceptance of responsibility which the Court awarded. Given the assertions Taveras made at sentencing regarding the drugs (his claim of roach powder) and his unfounded assertion that he was told the maximum was ten years, he would likely be subject to an enhancement for obstruction of justice, and could be indicted for perjury as well. Therefore, the withdrawal of the plea would be very much against his interests. This plea, given Taveras' admitted role in the offense and his previous criminal history, was clearly in his best interest, and his sentence could not legally have been lower.

Since Taveras knowingly and voluntarily waived his Constitutional and trial rights, and knowingly and voluntarily entered into a plea agreement, no legal basis exists for the withdrawal of the plea. Among the rights he waived was the right to appeal any sentence which was below 151 months. Because Judge Seybert sentenced him to 120 months, the waiver of the right to appeal is effective. Thus, there are no issues for this Court to consider.

## POINT TWO

## THERE ARE NO OTHER ISSUES TO BE RAISED

The record has been thoroughly searched. The defendant's Constitutional and statutory rights were protected, both by his own counsel and by the District Court, as is clear from the record. The Court took pains to assure itself that the defendant understood his rights, and knew what he would be giving up by pleading. The defendant responded appropriately to the Court's questions during his allocution, and made it clear that he understood the proceedings.

The defendant's insistence, before and during sentencing, that he possessed roach powder, not heroin, is belied by his own admission during the plea allocution and by his signing of the plea agreement with the assistance of competent counsel, who spoke the defendant's native Spanish. Similarly, his insistence that he was told that the maximum, not minimum, sentence was ten years is refuted by his attorney's sworn affirmation at the time of the motion to replace him. Mr. Guzman unequivocally represented to the Court that he told Taveras of the minimum sentence. Present counsel (this writer) also told him the same thing, on multiple occasions. The defendant's "buyer's remorse" is simply not enough to raise an issue for this Court.

19

It is apparent from a review of the facts and the law that there are no issues which can be raised on this appeal which are not frivolous. The defendant entered a plea pursuant to an agreement which contained a waiver of appellate rights, and was sentenced below the parameters of the waiver. Accordingly, counsel requests permission to withdraw from this appeal. *Anders v. California*, 388 U.S. 738 (1967).

## CONCLUSION

For the reasons stated above, the judgment of conviction and the sentence imposed may be affirmed, and counsel's motion for permission to withdraw should be granted.

DATED : Garden City, New York
April 24, 2023

Respectfully submitted,

*John S.Wallenstein*

JOHN S. WALLENSTEIN
Attorney for Defendant-Appellant
JUAN TAVERAS
1100 Franklin Avenue, Suite 305
Garden City, New York 11530
(516) 742-5600
JSWallensteinEsq@outlook.com

20

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32 (a) (7) (C) of the Federal Rules of Appellate Procedure, JOHN S. WALLENSTEIN, ESQ., counsel of record for Defendant-Appellant JUAN TAVERAS hereby certifies that the foregoing brief for Defendant-Appellant is in compliance with the type-volume limitations set forth in F.R.A.P. 32 (a) (7) (B), in that it contains 4,575 words as measured by the word processing program utilized to prepare the brief.

DATED:    GARDEN CITY, NEW YORK
               April 24, 2023


*John S. Wallenstein*
_____
JOHN S. WALLENSTEIN, ESQ.

21